## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

v.

LORENA LOREN,

        Defendant.

Case No. 2:17-cr-20527

Hon. Mark A. Goldsmith

Magistrate Judge R. Steven Whalen

## <u>MOTION TO REDUCE SENTENCE FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(a)(i)</u>

Defendant Lorena Loren respectfully moves this Court for an Order to Reduce Sentence for Compassionate Release Pursuant to 18 U.S.C. § 3582(C)(1)(a)(i).

Pursuant to L.R. 7.1, Defendant explained the motion and its legal basis to the government via telephone conference on April 6, 2020, and via email but did not obtain concurrence in the relief sought.

In support of this Motion, Defendant relies upon and incorporates by reference the facts and legal arguments in the accompanying Memorandum and related Exhibits submitted in support of Defendant's Motion to Reduce Sentence for Compassionate Release Pursuant to 18 U.S.C. § 3582(C)(1)(a)(i), and any evidence or argument that may be presented at a hearing on this matter.

*REDACTED VERSION OF DOCUMENT TO BE SEALED*

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: /s/ *Jonathan Su*
Jonathan Su (D.C. Bar No. 478171)
Alexandra T. Highsmith* (CA Bar No. 327166)
555 Eleventh Street, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-1049
Email: jonathan.su@lw.com

*\*Admitted in California only. All work supervised by a member of the D.C. Bar.*

LOCAL COUNSEL:

Catherine T. Dobrowitsky
Rivenoak Law Group, P.C.
3331 W. Big Beaver Road, Suite 109
Troy, MI 48084
Telephone: (248) 677-1045
Email: ctd@rivenoaklaw.com
P63245

*REDACTED VERSION OF DOCUMENT TO BE SEALED*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

vs.

LORENA LOREN,

      Defendant.

Case No. 2:17-cr-20527

Hon. Mark A. Goldsmith

Magistrate Judge R. Steven Whalen

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REDUCE SENTENCE FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(a)(i)</u>

# <u>TABLE OF CONTENTS</u>

QUESTION PRESENTED ........................................................................ iv

I.   INTRODUCTION .......................................................................... 1

II.  BACKGROUND AND PROCEDURAL HISTORY ..................................... 2

III. ARGUMENT ................................................................................ 6

    **A.   Through the First Step Act, Congress expanded the
compassionate release statute to encompass terminally ill
patients.** ............................................................................. 6

        **1.**   Many courts have granted relief to inmates with terminal
illnesses. ................................................................. 9

        **2.**   The federal government has noted the danger to inmates
caused by the current novel coronavirus pandemic. ............. 11

    **B.   Ms. Loren qualifies for compassionate release.** ...................... 13

        **1.**   Ms. Loren has exhausted her administrative remedies. ........... 14

        **2.**   There are extraordinary and compelling reasons for Ms.
Loren's compassionate release. ...................................... 14

        **3.**   Ms. Loren's request for reduction is consistent with the
applicable policy statements issued by the Sentencing
Commission because she is not a danger to the
community. ............................................................... 16

        **4.**   The relief Ms. Loren requests is consistent with the
statutory sentencing factors set forth in 18 U.S.C. §
3553(a). .................................................................. 17

        **5.**   Ms. Loren has a definitive plan for housing and medical
care should she be granted compassionate release. .............. 18

IV.  CONCLUSION ............................................................................ 19

i

*REDACTED VERSION OF DOCUMENT TO BE SEALED*

## TABLE OF AUTHORITIES

### STATUTES

18 U.S.C. § 3553(a) ................................................................................7

18 U.S.C. § 3582(c)(1)(A) ....................................................................7, 8

18 U.S.C. § 3582(c)(1)(A)(i) ...................................................................7

### CASES

*United States v. Beck*, 2019 WL 2716505 (M.D.N.C. June 28, 2019) .............. 9, 10

*United States v. Bellamy*, 2019 WL 3340699  (D.  Minn.  July 25, 2019)..............10

*United States v. Gasich*, 2019 WL 4261614 (N.D. Ind. Sept. 9, 2019)...................14

*United States v. Karr,* 2020 WL 774363 (E.D. Ky.  Feb. 18, 2020) ........................9

*United States v. Spears*, 2019 WL 5190877 (D. Or. Oct. 15, 2019) ........................9

*United States v. Wong Chai Fai*, 2019 WL 3428504 (E.D.N.Y. July 30, 2019).......9

### OTHER AUTHORITIES

Associated Press, *Ex-Brazil Federation President Has U.S. Jail Sentence Cut Short Due to Coronavirus Risk*, SPORTS ILLUSTRATED, Mar. 30, 2020, https://www.si.com/soccer/2020/03/31/jose-maria-marin-brazil-jail-sentence-coronavirus ......................................................................................13

Laurie McGlinley, *Patients with certain cancers are nearly three times as likely to die of covid-19, study says*, WASHINGTON POST, Apr. 28, 2020, https://www.washingtonpost.com/health/2020/04/28/coronavirus-cancer-deathrates/. ..................................................................................16

Memorandum from William Barr, Attorney Gen., U.S. Dep't of Justice, for Director of Bureau of Prisons, on Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic, Mar. 26, 2020 ......................11

Patricia Hurtado, *Former Brazil Soccer Boss Jailed in Scandal Gets Out Early*, Bloomberg News, Mar. 30, 2020,

*REDACTED VERSION OF DOCUMENT TO BE SEALED*

https://www.bloomberg.com/news/articles/2020-03-30/ex-brazil-soccer-boss-jailed-in-scandal-gets-out-early-for-virus ............................................................12

Sadie Gurman, *First Federal Inmate Dies of Covid-19, Deepening Fear of Coronavirus Spread in Prisons*, THE WALL STREET JOURNAL, Mar. 29, 2020, https://www.wsj.com/articles/first-federal-inmate-dies-of-covid-19-deepening-fear-of-coronavirus-spread-in-prisons-11585456750 ..........................................11

United States Sentencing Commission Guidelines Manual, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), U.S.S.G. § 1B1.13. ...................................................................................................8, 9

U.S. Department of Justice, Federal Bureau of Prisons, Program Statement, OPI OGC/LCI, Number 5050.50, January 17, 2019, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g). ...............................................................................................8

*REDACTED VERSION OF DOCUMENT TO BE SEALED*

## QUESTION PRESENTED

Under the compassionate release statute amended by the First Step Act, 18 U.S.C. § 3582(C)(1)(a)(i), a court may reduce a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  Given that the Defendant suffers from incurable metastatic breast cancer and is incarcerated during the coronavirus pandemic, should the Court reduce her sentence pursuant to the compassionate release statute?

*REDACTED VERSION OF DOCUMENT TO BE SEALED*

## I.    INTRODUCTION

The Defendant, Lorena Loren, through counsel and pursuant to 18 U.S.C.

§ 3582(C)(1)(a)(i), the compassionate release statute amended by the First Step

Act, moves this Court for an order reducing her sentence to time served.  The basis

of Ms. Loren's request is her advanced terminal illness: Stage 4 metastatic breast

cancer that has metastasized in Ms. Loren's lungs, bones, and lymph nodes.

As discussed below, both this Court and the government have recently

recognized the severity and advanced nature of Ms. Loren's illness, and the very

real possibility that she may not have much time left to live.  The urgency of Ms.

Loren's case is exacerbated by the fact that, as someone living with cancer and

undergoing chemotherapy, she is at higher risk of contracting the COVID-19 virus.

As the Attorney General recently recognized, in the present situation there are

certain individuals for which home confinement is more appropriate, and Ms.

Loren is such an individual.  She is non-violent, tragically ill, and has already

served over 22 months of her 37-month sentence.  The facts clearly establish that

compassionate release is warranted and Ms. Loren should be released from the

custody of the Bureau of Prisons ("BOP").

*REDACTED VERSION OF DOCUMENT TO BE SEALED*

## II.    BACKGROUND AND PROCEDURAL HISTORY

Ms. Loren is 58 years old and living with a terminal illness in its advanced

stages: Stage 4 metastatic breast cancer that is in her lungs, bones, and lymph

nodes.  Her condition was not known at the time she was sentenced by this Court.

Ms. Loren is in the custody of the BOP because on August 29, 2017, she

pleaded guilty to conspiracy to commit federal program fraud, in violation of

18 U.S.C. § 371.  There is no question that Ms. Loren's crimes were serious –

through various schemes she embezzled over $300,000 in federal funds to which

she was not entitled.

On March 21, 2018, this Court conducted Ms. Loren's sentencing hearing.

At sentencing, the government acknowledged that Ms. Loren had accepted

responsibility for her actions and had expressed remorse.  This Court, considering

all of the relevant factors pursuant to 18 U.S.C. § 3553(a), sentenced Ms. Loren to

37 months imprisonment and permitted her to self-surrender.  At the time of her

sentencing, the extent of Ms. Loren's physical ailments had not yet been

discovered.

Ms. Loren self-surrendered to the BOP on June 8, 2018 and was designated

to FMC Carswell in Texas.  In September 2019, Ms. Loren was transferred on a

writ from federal custody to a local jail in Michigan because she had been

subpoenaed by the government to provide testimony relating to the government's

*REDACTED VERSION OF DOCUMENT TO BE SEALED*

prosecution of certain of Ms. Loren's family members on charges related to those for which she was in custody.

The government then filed a motion pursuant to Fed. R. Crim. P. 15, seeking to depose Ms. Loren in order to preserve testimony for trial. *See* Government's Mot. for Rule 15 Dep., Case No. 18-20827-MAG-RSW, ECF No. 50 (September 11, 2019) (Exhibit A). In its motion, the government stated that "[t]he United States was recently informed by deputies of the U.S. Marshal that Ms. Loren is suffering from Stage 4 cancer and that her prognosis is dire." *Id*. at ¶ 4. The motion further stated that Ms. Loren was being transported to an outside hospital for treatment and indicated the government's belief that there was a likelihood Ms. Loren would not be able to attend trial, then scheduled for January 2020. *Id.* After receiving further information regarding treatment from the U.S. Marshals Service, including confirmation of the fact that Ms. Loren was receiving chemotherapy regarding her cancer, this Court granted the motion, subject to the condition that the deposition not interfere with Ms. Loren's cancer treatment. Order Granting Government's Mot. for Rule 15 Dep., Case No. 18-20827-MAG-RSW, ECF No. 57 (Oct. 8, 2019) (Exhibit B).

In September 2019, while Ms. Loren was in Michigan providing the testimony requested by the government, Ms. Loren's husband, Brian Loren, sent a request for Ms. Loren's compassionate release to the warden of FMC Carswell.

*REDACTED VERSION OF DOCUMENT TO BE SEALED*

*See* Exhibit C, Mr. Loren's request, and Exhibit D, delivery confirmation.  FMC Carswell staff verbally acknowledged to Mr. Loren receiving the request, but were apparently unsure how to proceed as Ms. Loren was not in their physical custody at the moment (she was in Michigan pursuant to the government's writ). Undersigned counsel understands the FMC Carswell administrative office does not have a record of receiving the request for compassionate release, despite the aforementioned delivery confirmation (Exhibit D).  In addition to this request, Ms. Loren asked her social worker about compassionate release on March 5, 2020 and submitted an additional request for compassionate release.  Exhibit E-4 at 173.

Ms. Loren's condition has continued to decline.  Even after the deposition concluded, Ms. Loren was kept at the local jail in Michigan due to concerns that she was too physically weak to travel back to Texas.  While in custody in Michigan, Ms. Loren fell, sustaining ███████████.  Exhibit E-1 at 63, Exhibit E-3 at 1088.  As a result of her deteriorating health and her injuries, she required several days long hospitalizations, during which she suffered from ███████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████  *See, e.g.*, Exhibit E-1 at 37, 52.

During a hospitalization in October 2019, physicians determined that Ms. Loren suffered from "rapidly progressive metastatic breast cancer."  Exhibit E-1 at

111, Exhibit E-2 at 478.   The physicians also determined that she was predisposed to bone fractures, due to the extensive nature of the spread of cancer to her bones. Exhibit E-1 at 41.  That same month, Ms. Loren's treating physicians noted that she had already undergone bilateral mastectomies and a total hysterectomy with bilateral salpingo-oophorectomy (a surgery to remove the cervix, ovaries, and fallopian tubes), followed by chemotherapy.  Exhibit E-1 at 50, excerpted below. Despite this aggressive treatment, cancer continued to spread through Ms. Loren's body, into her bones, lymph nodes, and lungs.  Ms. Loren's treating physicians noted the concern for further spread into her lymph nodes:



Exhibit E-1 at 49-50.

Ms. Loren was also found to have ███████████████.  Exhibit E-1 at 175.  The seriousness and extensiveness of both her breast cancer and the malignancies in her bones are noted throughout her medical records.  *See generally* Exhibits E-1, E-2 and E-3 (noting extensive diffuse lytic osseous metastatic disease that progressed since prior studies and rapidly progressive metastatic breast cancer).  Doctors believed she had less than one year to live.  *Id.*

In late February 2020, Ms. Loren was finally in sufficient physical condition to be transported back to FMC Carswell.  When she returned, she was tired, weak, in pain, and dependent on oxygen.  Exhibit E-4 at 191, 204.  PET scans conducted at FMC Carswell showed metastatic disease with lung and lymph node metastases.  *Id.* at 120.  In early April, she was given a prognosis of two to ten years.  *Id.* at 43.

Ms. Loren's current release date is January 14, 2021.

## III.   ARGUMENT

### A.   Through the First Step Act, Congress expanded the compassionate release statute to encompass terminally ill patients.

Until recently, Ms. Loren would have had no choice but to wait for the BOP to act on the request for compassionate release.  Under the compassionate release statute, as originally written, the BOP was authorized to file in court a motion for reduction of sentence based on compassionate release.  But if the BOP refused to file such a motion, the defendant had no right to file one on her own.

The recently-enacted First Step Act solved this problem.  The statute now allows a defendant to file in the district court a motion on her own behalf, so long as she first exhausts administrative remedies by petitioning the BOP to make such a motion.  Alternatively, a defendant is deemed to have exhausted her administrative remedies if thirty days have lapsed from the receipt of such a request by the warden of the defendant's facility. 18 U.S.C. § 3582(c)(1)(A).  Once that motion is filed, a sentencing court is empowered to reduce a defendant's prison sentence if, after consideration of the factors set forth in 18 U.S.C. § 3553(a), it finds "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).  Because Ms. Loren has exhausted her administrative remedies, her circumstances—her terminal illness— constitute "extraordinary and compelling reasons" and the 18 U.S.C. § 3553(a) factors weigh in favor of release, she respectfully moves this Court to reduce her sentence to time served, or to probation with or without a condition of home confinement.

Once petitioned, a court may modify a sentence on compassionate release grounds if: (1) "extraordinary and compelling reasons warrant such a reduction"; (2) the reduction "is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, weigh in favor of release. *Id*. The Sentencing Commission's policy statement provides that three conditions must

be met to modify a sentence on compassionate release grounds.  As relevant here,

the Sentencing Commission states that compassionate release is warranted where

"[e]xtraordinary and compelling reasons warrant the reduction, the defendant is not

a danger to the safety of any other person or to the community, and the reduction is

consistent with this policy statement."  The facts of Ms. Loren's case clearly

establishes that she qualifies for relief under these standards.

The Commission's statement outlines criteria that are considered

"extraordinary and compelling reasons" for sentence reduction.  As pertinent here,

the Commission considers the medical condition of the defendant, and specifically

discusses "suffering from a terminal illness (i.e., a serious and advanced illness

with an end of life trajectory).  A specific prognosis of life expectancy... is not

required."  *Id.*  In January 2019, the BOP issued a Program Statement further

articulating specific medical conditions for which reduced sentences are warranted.

U.S. Department of Justice, Federal Bureau of Prisons, Program Statement, OPI

OGC/LCI, Number 5050.50, January 17, 2019, Compassionate Release/Reduction

in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g).

According to the BOP Statement, a defendant who has an "incurable, progressive

illness" may be considered for compassionate release.  *Id.*

In addition, the Sentencing Commission's policy statement provides that "an

extraordinary and compelling reason need not have been unforeseen at the time of

sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G.

§ 1B1.13, application n. 2.  The  statement also recognizes that "[t]he court is in a

unique position to determine whether the circumstances warrant a reduction." *Id*.

application n. 4.  Ms. Loren's advanced stage cancer, undetected at the time of her

sentencing, unquestionably fits within this criteria.

        **1.**      Many courts have granted relief to inmates with terminal illnesses.

Courts have exercised their new authority under the First Step and have

granted compassionate release under similar circumstances.[1]  For example, in

*United States v. Beck*, a district court considered a defendant's motion to

compassionate release after the warden's office received a letter requesting the

BOP consider compassionate release but failed to act. 2019 WL 2716505, at 6

(M.D.N.C. June 28, 2019) (Exhibit G).  The court found that the defendant's breast

cancer, which had spread to her lymph nodes, was an extraordinary and compelling

reason to warrant a sentence reduction.  In considering the § 3553(a) factors, the

court acknowledged the seriousness of the defendant's criminal conduct, but

---

[1] *See, e.g.*, *United States v. Spears*, 2019 WL 5190877 (D. Or. Oct. 15, 2019) (ordering release of a defendant who suffered from "possibly terminal" prostate cancer), attached as Exhibit K; *United States v. Gasich*, 2019 WL 4261614 (N.D. Ind. Sept. 9, 2019) (granting emergency motion for sentence reduction for defendant with Stage 4 breast cancer), attached as Exhibit I; *United States v. Wong Chai Fai*, 2019 WL 3428504 (E.D.N.Y. July 30, 2019) (releasing Defendant sentenced to life imprisonment based on metastatic papillary thyroid cancer diagnosis), attached as Exhibit L.

*REDACTED VERSION OF DOCUMENT TO BE SEALED*

granted compassionate release because the defendant's terminal diagnosis and nonviolent history made recidivism unlikely and because the time she had already served was a "significant punishment, especially for someone who had never been incarcerated before." *Id.* at 11.

In *United States v. Bellamy*, the court ordered the release of a defendant who suffered from heart problems, diabetes, and chronic kidney disease. 2019 WL 3340699, at 1 (D. Minn. July 25, 2019) (Exhibit H). Although the defendant's health conditions were not terminal, the *Bellamy* Court found that his medical conditions met the criteria for extraordinary and compelling reasons because his ability to function in a correctional facility had deteriorated and he had been hospitalized several times during his sentence. *Id.* at 3-4. The court also determined that the defendant presented a minimal danger to the community given his deteriorating state and that the sentence he served, combined with supervised release, sufficiently reflected the seriousness of his criminal conduct. *Id.* at 5-7.

Courts also consider the timing of illness progression. Recently, in *United States v. Karr*, the court ordered the early release of a defendant with Stage 4 lung cancer when illness progressed significantly post-sentencing. 2020 WL 774363 at 4 (E.D. Ky. Feb. 18, 2020) (Exhibit J). Because the defendant served most of his two years in federal custody with a cancer diagnosis, the court reasoned that his time served had been "significantly more laborious than that served by most

inmates. *Id.* (citing *United States v. McGraw*, 2019 WL 2059488, at 5 (S.D. Ind. May 9, 2019). Furthermore, the court found it "critical" that the defendant committed his crime *prior* to his diagnosis; although the crime was grave, it did not warrant life imprisonment. *Id.* at 6-8.

> **2.** The federal government has noted the danger to inmates caused by the current novel coronavirus pandemic.

On March 26, the Attorney General directed the BOP to utilize home confinement for "at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences" at home, precisely the circumstances presented by Ms. Loren's case.[2]   Indeed, on Saturday, March 28, 2020, the BOP announced the first death of an inmate from coronavirus. The BOP is "grappling with how to slow the spread of the disease" in its facilities and has warned that the number of inmates and correctional officers infected could quickly increase.[3] On March 31, 2020, the BOP ordered implementation of "Phase 5 of its COVID-19 Action Plan" in response to an increase in the number of cases

---

[2] Memorandum from William Barr, Attorney Gen., U.S. Dep't of Justice, for Director of Bureau of Prisons, on Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic, Mar. 26, 2020, attached as Exhibit M.

[3] Sadie Gurman, *First Federal Inmate Dies of Covid-19, Deepening Fear of Coronavirus Spread in Prisons*, THE WALL STREET JOURNAL, Mar. 29, 2020, https://www.wsj.com/articles/first-federal-inmate-dies-of-covid-19-deepening-fear-of-coronavirus-spread-in-prisons-11585456750.

in BOP facilities.[4]  The Attorney General issued another memorandum on April 3, further encouraging transfers to home confinement.[5]

The BOP is tracking positive coronavirus cases.[6]  As of April 28, 1,313 BOP inmates and 335 BOP staff members had tested positive for the virus.  There is at least one case at FMC Carswell, where Ms. Loren is incarcerated.

Further, courts have granted compassionate release during the coronavirus pandemic.  U.S. District Judge Pamela K. Chen granted a motion for compassionate release to a defendant who had served most of his four-year sentence for wire fraud conspiracy.[7]  Judge Chen cited the defendant's "advanced age, significantly deteriorating health, elevated risk of dire health consequences due to the current COVID-19 outbreak, status as a non-violent offender and service of 80% of his original sentence" as reasons for his release.[8]  On April 2, U.S.

---

[4] Press Release, U.S. Dep't of Justice, Federal Bureau of Prisons, on Bureau of Prisons COVID-19 Action Plan: Phase Five, Mar. 31, 2020, attached as Exhibit N.

[5] Memorandum from William Barr, Attorney Gen., U.S. Dep't of Justice, for Director of Bureau of Prisons, on Increasing Use of Home Confinement at Institutions Most Affected by COVID-19, Apr. 3, 2020, attached as Exhibit

[6] COVID-19 Coronavirus, https://www.bop.gov/coronavirus/, last accessed April 29, 2020.

[7] Patricia Hurtado, *Former Brazil Soccer Boss Jailed in Scandal Gets Out Early*, BLOOMBERG NEWS, Mar. 30, 2020, https://www.bloomberg.com/news/articles/2020-03-30/ex-brazil-soccer-boss-jailed-in-scandal-gets-out-early-for-virus.

[8] Associated Press, *Ex-Brazil Federation President Has U.S. Jail Sentence Cut Short Due to Coronavirus Risk*, SPORTS ILLUSTRATED, Mar. 30, 2020,

District Judge Paul A. Engelmayer determined that the coronavirus pandemic presented "extraordinary and compelling reasons for release" and granted a motion for compassionate release to a defendant who suffers from asthma.[9]  That defendant was serving a two-year sentence for gang-related shootings and robberies.

### B.     Ms. Loren qualifies for compassionate release.

Ms. Loren qualifies for compassionate release, and such relief should be granted.  First, she has exhausted her administrative remedies.  Second, Ms. Loren's terminal cancer diagnosis and the current coronavirus pandemic are extraordinary and compelling reasons for her release.  Finally, reducing Ms. Loren's sentence comports with both the applicable policy statements issued by the Sentencing Commission and the factors set forth in 18 U.S.C. § 3553(a).  Ms. Loren is nonviolent, presents virtually no risk of recidivism, and was not sentenced to die in prison.

---

https://www.si.com/soccer/2020/03/31/jose-maria-marin-brazil-jail-sentence-coronavirus.

[9] Melena Ryzik and Nancy Coleman, *As Tekashi69 Is Released, Inmates Fearing Coronavirus Ask, 'Why Not Me?'*, N. Y. TIMES, Apr. 2, 2020, https://www.nytimes.com/2020/04/02/arts/music/tekashi69-free-prison-coronavirus.html.

    1.     Ms. Loren has exhausted her administrative remedies.

This Court should grant Ms. Loren compassionate release because she satisfied the threshold requirement that she exhaust administrative remedies with the BOP.  Ms. Loren's request for compassionate release was received at FMC Carswell in mid-September 2019.  *See* Exhibits C and D.[10]  She also made a request for compassionate release on March 5, 2020 as the coronavirus pandemic evolved.  *See* Exhibit E-4 at 173.  Thus, Ms. Loren has fulfilled the requirement set forth in § 3582(c)(1)(A) that she wait for the "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."  Her motion is now properly before this Court because more than thirty days have passed since FMC Carswell received the request.

    2.     There are extraordinary and compelling reasons for Ms. Loren's compassionate release.

Ms. Loren suffers from incurable metastatic breast cancer that has spread throughout her body, including to her lymph nodes, like the defendant in *Beck*. She therefore falls squarely into the first category set forth by the Sentencing Commission in U.S.S.G. § 1B1.13: "The defendant is suffering from a terminal

---

[10] FMC Carswell apparently has no record of receiving this request, however, Exhibit D shows that the letter sent on Ms. Loren's behalf was sent to the address listed on FMC Carswell's website (*See* https://www.bop.gov/locations/institutions/crw/).

*REDACTED VERSION OF DOCUMENT TO BE SEALED*

illness (i.e., a serious and advanced illness with an end of life trajectory."  In

September 2019, the government filed a motion to compel Ms. Loren's testimony

pursuant to Fed. R. Crim.  P. 15(a)(1), stating that deputies of the U.S. Marshal

reported that she was suffering from Stage 4 cancer with a dire prognosis.

Exhibit A.  The court confirmed that Ms. Loren was receiving chemotherapy, and

granted the government's motion. Exhibit B.  After her deposition, Ms. Loren was

kept in custody in Michigan because she was too weak to travel back to FMC

Carswell.  During the months in which she was incarcerated in Michigan, Ms.

Loren experienced episodes of loss of consciousness which caused her to fall at

least once.  *See* Exhibits E-1 and E-2.  After a fall, Ms. Loren sustained acute renal

failure.  Exhibit E-3 at 1079.  She required hospitalization and was finally

transferred back to FMC Carswell in February 2020.  Ms. Loren's cancer has now

spread to her bones and is now in its advanced stages.

The current novel coronavirus pandemic also puts Ms. Loren at further risk.

As the National Cancer Institute, a division of the U.S. Department of Health and

Human Services and the nation's leader in cancer research, has stated,

chemotherapy "can weaken your immune system and may increase your risk of

any infection, including with SARS-CoV-2, the virus that causes COVID-19.

During chemotherapy, there will be times in your treatment cycle when you are at

*REDACTED VERSION OF DOCUMENT TO BE SEALED*

increased risk of infection."[11]  According to a peer-reviewed study released at the American Association for Cancer Research's virtual annual meeting, cancer patients who contract the coronavirus are three times more likely to die.[12]  The study also showed that patients with lung malignancies were at higher risk, as were patients undergoing chemotherapy.

Ms. Loren is precisely the type of inmate for which the Attorney General stated home confinement is appropriate: she is non-violent, poses minimal likelihood of recidivism, and would be far safer serving her sentence at home because she is undergoing immunosuppressing chemotherapy and has lung malignancies.

> **3.** Ms. Loren's request for reduction is consistent with the applicable policy statements issued by the Sentencing Commission because she is not a danger to the community.

As discussed above, the Sentencing Commission's policy statements specify that a sentence reduction is warranted where "[e]xtraordinary and compelling reasons warrant the reduction, the defendant is not a danger to the safety of any

---

[11] *See* National Cancer Institute, "Coronavirus: What People With Cancer Should Know," *available at* https://www.cancer.gov/contact/emergency-preparedness/coronavirus#if-i-have-cancer-am-i-at-higher-risk-of-getting-or-dying-from-covid-19.

[12] Laurie McGinley, *Patients with certain cancers are nearly three times as likely to die of covid-19, study says*, WASHING POST, Apr. 28, 2020, https://www.washingtonpost.com/health/2020/04/28/coronavirus-cancer-deathrates/.

other person or to the community, and the reduction is consistent with this policy statement."  Ms. Loren's terminal illness qualifies as an "extraordinary and compelling" reason under the Commission's policy statement.  She is not a danger to the community, as her underlying crime was non-violent and given her advanced medical condition there is no chance she will commit further crime.  Ms. Loren's requested release would be consistent with these policy statements.

> **4.** The relief Ms. Loren requests is consistent with the statutory
> sentencing factors set forth in 18 U.S.C. § 3553(a).

Under 18 U.S.C. § 3553(a)(1), which sets forth factors to be considered in sentencing, the Court must consider the nature and circumstances of Ms. Loren's offenses.  Ms. Loren pleaded guilty to federal program fraud and this Court sentenced her to 37 months imprisonment.  *Id*.  At this time, Ms. Loren has served more than 22 months of her sentence.

Ms. Loren had no criminal history prior to her conviction, and she accepted responsibility for her conduct. *See, e.g.,* ECF No. 23 PageID.193, PageID.202. Like the defendant who was granted compassionate release in Beck, Ms. Loren's crimes were nonviolent, and given her current condition, recidivism is highly unlikely.  And similar to the defendant in *Bellamy*, who presented little risk of danger to the community, Ms. Loren's presents minimal to no danger to the community given her current condition and prognosis.

17

Furthermore, the time Ms. Loren has already served is a significant punishment.  Given Ms. Loren's illness progression and invasive surgeries, the punishment here is even more profound than was expected at sentencing.  In *Karr*, the defendant, like Ms. Loren here, served two years with rapidly progressing cancer, suffered side-effects of cancer treatment while incarcerated, and was granted a reduced term.  Ms. Loren's time served has been precisely what the *Karr* Court described: "significantly more laborious than that served by most inmates." At only 58 years old, she has lost not only her liberty in prison, but faces the prospect of a very grim medical diagnosis and outlook.  Continued incarceration would be greater than necessary to serve the purposes of 18 U.S.C. §3553(a).

> **5.** Ms. Loren has a definitive plan for housing and medical care should she be granted compassionate release.

In addition to the nature of a defendant's medical conditions, the Sentencing Commission urges courts to consider the defendant's family circumstances and whether the defendant is a danger to the safety of any other person or to the community.  U.S.S.G. § 1B1.13, comment n. 4.  Here, the facts make clear that Ms. Loren would have a definitive plan for housing and medical care, were the Court to grant compassionate release.

Ms. Loren's husband, Brian Loren, currently lives in Daytona Beach, Florida, and is ready to provide housing for her.  Moreover, Mr. Loren has a health

*REDACTED VERSION OF DOCUMENT TO BE SEALED*

insurance policy through his employer, and he would enroll Ms. Loren on that health care plan so that she would have adequate medical treatment.

In addition to her spouse, Ms. Loren also has other relatives who live in the immediate vicinity Daytona Beach, Florida. Specifically, Ms. Loren's son and daughter-in-law live in the same apartment complex as her husband, and her daughter lives in South Daytona Beach, fewer than two miles away from Mr. Loren. All are prepared to help care for and help house Ms. Loren.

The Court is aware that the government has charged Ms. Loren's husband, son, daughter-in-law, and son-in-law with regard to the conduct for which Ms. Loren is incarcerated. These family members have pleaded not guilty to these charges and at this point are scheduled to proceed to trial. In the event that these persons are unable to aid in the care and support of Ms. Loren, Ms. Loren would be cared for by her daughter, who has not been charged.

## IV. CONCLUSION

The facts of Ms. Loren's case establish that compassionate release is warranted. Her health is deteriorating rapidly, as this Court and the government have acknowledged. She has also been punished severely for her conduct, having nearly two years months in the BOP. Given Ms. Loren's severe medical condition, she respectfully asks this Court to grant compassionate release so that she can return to be with her family while she seeks cancer treatment.

*REDACTED VERSION OF DOCUMENT TO BE SEALED*

Respectfully submitted,

**LATHAM & WATKINS LLP**
By: /s/ *Jonathan Su*
Jonathan Su (D.C. Bar No. 478171)
Alexandra T. Highsmith* (CA Bar
No. 327166)
555 Eleventh Street, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-1049
Email: jonathan.su@lw.com

*\*Admitted in California only. All work supervised by a member of the D.C. Bar.*

LOCAL COUNSEL:

Catherine T. Dobrowitsky
Rivenoak Law Group, P.C.
3331 W. Big Beaver Road, Suite 109
Troy, MI 48084
Telephone: (248) 677-1045
Email: ctd@rivenoaklaw.com
P63245

## CERTIFICATION OF SERVICE

I hereby certify that on May 19, 2020, I electronically filed the above document and related exhibits with the Clerk of the Court using the ECF system, which will send notification thereof to all parties of record via the ECF system.

By: /s/ *Jonathan Su*
Jonathan Su (D.C. Bar No. 478171)
555 Eleventh Street, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-1049
Email: jonathan.su@lw.com